UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOYCE WALTZ and ROBERT WALTZ,

        Plaintiffs,      02 Civ. 7051 (RPP)

   - against -          **OPINION AND ORDER**

MRC MANAGEMENT, LLC and VORNADO
REALTY TRUST,

        Defendants.
------------------------------------------------------------------X
MRC MANAGEMENT, LLC and VORNADO
REALTY TRUST,

        Third-Party Plaintiffs,

   - against -

MILLAR ELEVATOR INDUSTRIES, INC.,

        Third-Party Defendant.
------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

   This is an action brought by third-party plaintiff MRC Management, LLC and Vornado Realty Trust ("MRC/Vornado") to recover on its contractual indemnification agreement with third-party defendant Millar Elevator Industries, Inc. ("Millar"). On June 15, 2005, Millar moved for an order: "(1) directing that to recover on its contractual indemnification claim against Millar, defendants/third-party plaintiffs [MRC/Vornado] must establish by a preponderance of the evidence that: (a) MRC/Vornado's settlement with the plaintiff was reasonable; (b) MRC/Vornado's settlement with the plaintiff was made in good faith; and (c) MRC/Vornado was in fact actually liable to the plaintiff; (2) deferring a ruling on MRC/Vornado's entitlement to indemnification, pursuant to Mas v. Two Bridges Assoc., 75 N.Y.2d 680, 554 N.E.2d 1257,

555 N.Y.S.2d 669 (1990), until after the trial of the indemnification claim." (Affirmation of Richard J. Sabatini in Support of Millar's Trial Brief ("Sabatini Aff.") ¶ 1.) For the reasons stated below, Millar's motion for a jury determination of whether MRC/Vornado's settlement was reasonable and in good faith is denied.

**BACKGROUND**

MRC/Vornado is the owner of One Penn Plaza, a large office building located in New York, New York. On November 21, 2001, original plaintiffs Joyce and Robert Waltz commenced a lawsuit against MRC/Vornado asserting that MRC/Vornado was liable for damages from injuries Joyce Waltz sustained while riding on an elevator in One Penn Plaza. The plaintiffs alleged that on November 24, 1999, after Ms. Waltz entered an elevator on the 43rd floor of the building, the elevator immediately "shot down" and then up again, causing severe injuries to her cervical spine.

On June 16, 2003, MRC/Vornado impleaded third-party defendant Millar into the action pursuant to an elevator maintenance agreement between MRC/Vornado and Millar. The elevator maintenance agreement contains an indemnification clause that requires Millar to indemnify MRC/Vornado for personal injury damages claims "provided that and to the extent that said damages and/or losses . . . are caused by the negligence of [Millar]." (Elevator Maintenance Agmt. at 12.) MRC/Vornado and Millar proceeded to defend the action brought by the plaintiffs together. They shared experts, witnesses, and expenses. Both MRC/Vornado and Millar participated in an unsuccessful settlement conference with the plaintiffs and the Court. During this conference, plaintiffs' counsel made clear that plaintiffs' claims were not only for

negligent maintenance of the elevator but also against MRC/Vornado for failure to replace the elevator controllers after Millar notified MRC/Vornado of the need for such replacements.[1]

On May 6, 2005, just before the commencement of trial, this Court imposed a discovery sanction striking defendants' denial of plaintiffs' claims of negligence. The sanction was imposed because MRC/Vornado failed to produce the elevator maintenance logs and other records, which would have showed when the elevator in question was out of service and the nature of the maintenance performed on that elevator,[2] as well as any complaints by building tenants about elevator malfunctions.[3] This Court also severed MRC/Vornado's third-party action against Millar.

Following the Court's imposition of the discovery sanction and severance of the third-party action, MRC/Vornado reopened settlement negotiations with the plaintiffs. MRC/Vornado notified Millar of the reopened negotiations and informed Millar of the settlement amount to which MRC/Vornado ultimately agreed. However, Millar "refused an opportunity to participate in settlement," (Affirmation of Fred B. Smith in Opposition to Sabatini Aff. ("Smith Aff.") ¶ 4.), "essentially by refusing to almost double its offer after sanctions were imposed," (Millar Reply Mem. at third unnumbered page). MRC/Vornado and the plaintiffs then settled the action for $855,000. MRC/Vornado now seeks to proceed to trial to establish the extent of its right to indemnification from Millar.

---

[1] The argument that MRC/Vornado was liable because it failed to replace the elevator controllers was based on the testimony of a former Millar employee who was serving as an expert for Millar in this action.

[2] Under the elevator maintenance agreement between MRC/Vornado and Millar, Millar had an obligation to maintain records of inspections, emergencies, and repairs of the building's elevators. (Elevator Maintenance Agmt. at 14.)

[3] Third-party discovery had shown that complaints about the safety of the elevators had been submitted to MRC/Vornado.

Millar, on the instant motion, requests that this Court order that the trial include a jury finding that MRC/Vornado's settlement with the plaintiffs was reasonable and in good faith. Millar also requests that the Court defer a ruling on MRC/Vornado's entitlement to indemnification until after that trial.

**DISCUSSION**

Under New York law, "When an indemnitor has notice of the claim against it, the general rule is that the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make." Fidelity Nat'l Ins. Co. of N.Y. v. First N.Y. Title & Abstract Ltd., 269 A.D.2d 560 561, 707 N.Y.S.2d 112 (2d Dept. 2000); see also Goldmark Indus., Ltd. v. Tessoriere, 256 A.D.2d 306, 307, 681 N.Y.S.2d 327 (2d Dept. 1998); Coleman v. J.R.'s Tavern, Inc., 212 A.D.2d 568, 569, 622 N.Y.S.2d 334 (2d Dept. 1995).

In this action, the plaintiffs' case was based on Ms. Waltz's claim that, immediately after she entered an elevator on the 43rd floor of MRC/Vornado's premises, the elevator "shot down" and then up again, causing severe injuries to her cervical spine. It is undisputed that Ms. Waltz underwent a double cervical fusion surgery only weeks after the elevator incident and continues to be under medical treatment for pain related to the injuries. It is also undisputed that Ms. Waltz has not returned to work and that the plaintiffs' vocational expert concluded that Ms. Waltz is not eligible to return to gainful employment. The plaintiffs' theories of liability and alleged damages were summarized in plaintiffs' counsel's letter to the Court, with copies to counsel, dated April 20, 2005. (Letter from Kimberly A. Sorrentino, dated Apr. 20, 2005.)

Millar seeks to prove at trial that the settlement is "unduly inflated" and not reasonable because "plaintiff's medical condition was exaggerated and not proximately caused by defendants' negligence." (Millar's Mem. at fourth unnumbered page.) However, based on the

4

record on the eve of trial, a jury verdict in favor of the plaintiffs was by no means unlikely and could have resulted in a greater award of damages than the settlement amount. Moreover, MRC/Vornado obtained a settlement amount that was significantly lower than the settlement amount requested by the plaintiffs at a settlement conference convened by the Court weeks before the discovery sanction was imposed.[4] To be sure, defendants could have challenged Ms. Waltz's credibility at trial and, if successful, such challenges could have resulted in a jury verdict awarding plaintiffs a lower damage award, or no damages at all. Nonetheless, in view of the record, this Court will not second-guess MRC/Vornado's unwillingness to risk a potentially much larger verdict by going to trial. Indeed, under the circumstances plaintiffs may have been entitled to a res ipsa loquitur charge. Accordingly, MRC/Vornado's settlement with the plaintiffs was not unreasonable.

Furthermore, it is clear that MRC/Vornado entered into the settlement with the plaintiffs in good faith. Millar contends that MRC/Vornado's counsel was forced to settle once the Court imposed the discovery sanction and severed the third-party action because his almost exclusive reliance on Millar's defense preparation left him unprepared to go forward with the trial. However, Millar has failed to highlight any evidence that supports this speculation.[5] Cf. Tokio Marine & Fire Ins. Co. v. Pagan, No. 02 Civ. 4211 (JSR), 2003 U.S. Dist. LEXIS 5902, at *5-6

---

[4] The Court attended the settlement conference and Millar's statement that MRC/Vornado settled for "almost ten times the amount it was prepared to pay hours before" the Court imposed the discovery sanction and severed the third-party action is not only untrue, it is highly misleading. (Millar's Reply Mem. at fourth unnumbered page.)

[5] It is true that MRC/Vornado applied to the Court for additional time to retain an elevator expert. However, this fact does not support Millar's argument that MRC/Vornado was unprepared to go forward with the trial against the plaintiffs because the MRC/Vornado made its application after it reached a settlement with the plaintiffs and Millar retained plaintiffs' elevator expert. At the May 6, 2005 conference, over the plaintiffs' objection, the Court ruled that MRC/Vornado could use the experts that Millar and MRC/Vornado had agreed to share. MRC/Vornado's counsel, an experienced trial lawyer, had attended the experts' depositions and had had discussions with the experts about their testimony. (Smith Aff. ¶ 15.) Furthermore, there was nothing to prevent Millar's counsel from attending the trial and rendering assistance to MRC/Vornado's counsel.

5

(S.D.N.Y. Apr. 9, 2003) (rejecting indemnitors' request for a trial on reasonableness and good faith of settlement because indemnitors "failed to adduce any competent evidence of record that materially supports" their speculation that indemnitees, inter alia, "settled hastily, without sufficient investigation of the damages and the various defenses available to the [indemnitors] against [the original plaintiff]"). To the contrary, MRC/Vornado states that after the Court imposed the discovery sanction, "we were nevertheless prepared to proceed against plaintiffs' damages action." (Smith Aff. ¶ 15.) More importantly, in view of the plaintiffs' dual theories of liability—negligent maintenance of the elevators and MRC/Vornado's failure to replace the elevator controllers despite Millar's recommendation to do so—MRC/Vornado was not in the position of an indemnitee that agrees to an inflated settlement amount knowing that it will be able to obtain full reimbursement from the indemnitor. Instead, MRC/Vornado faced, and continues to face, potential liability for some or all of the plaintiffs' damages. Thus, this case is distinguishable from Feuer v. Menkes Feuer, Inc., 8 A.D.2d 294, 187 N.Y.S.2d 116 (1st Dept. 1959), upon which Millar relies. (Millar's Reply Mem. at fourth unnumbered page.) Accordingly, there are no grounds to believe that MRC/Vornado would have settled with the plaintiffs for anything other than the lowest amount it could have negotiated. Clearly, MRC/Vornado reached the settlement in good faith.

In view of the notice provided to Millar, MRC/Vornado's potential liability to the plaintiffs, and Millar's failure to adduce any evidence showing the existence of material issues of fact regarding MRC/Vornado's good faith and the reasonableness of its settlement with the plaintiffs, Millar's motion for a jury determination of whether MRC/Vornado's settlement was reasonable and in good faith is denied. Cf. Fidelity Nat'l, 269 A.D.2d at 561-62 (holding that indemnitor failed to raise triable issue of fact where record contained ample evidence that

indemnitor received notice of claim against it, that indemnitee made reasonable settlement in good faith, and that indemnitee could have been held liable if it had proceeded to trial.); Goldmark Indus., Ltd., 256 A.D.2d at 307 (same). As Judge Hellerstein observed in a similar case where an indemnitor had notice of a settlement, refused to consent to the settlement, and thereafter sought a trial on the reasonableness and good faith of the settlement, "[an indemnitor] cannot object to a settlement merely because it could have driven a tougher bargain, or been a tougher litigator." Conopco, Inc. v. Imperial Chem. Indus. PLC, No. 97 Civ. 5529 (AKH), 1999 U.S. Dist. LEXIS 17465, at *15 (S.D.N.Y. Nov. 8, 1999).

In view of the foregoing, this case will proceed to trial and the Court need not rule on Millar's request that the Court defer a ruling on MRC/Vornado's entitlement to indemnification.

**CONCLUSION**

For the reasons stated above, Millar's motion for a trial to determine whether MRC/Vornado's settlement was reasonable and made in good faith is denied. Trial is scheduled for 9:30a.m. on August 15, 2005, in Courtroom 24A.

IT IS SO ORDERED.

Dated: New York, New York
July 25, 2005

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

Counsel for Third-Party Plaintiff-MRC Management, L.L.C. and Vornado Realty Trust:

Law Offices of Charles J. Siegel
40 Wall Street, 7th Floor
New York, NY 10005
By:   Fred B. Smith
Tel:   212-440-2350
Fax:   212-440-2380


Counsel for Third-Party Defendant-Millar Elevator Industries, Inc.:

Clauss & Sabatini
1350 Broadway, Suite 1710
New York, NY 10018
By:   Richard J. Sabatini
Tel:   212-239-5900
Fax:   212-279-1265